[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 476.]

THE STATE EX REL. CITY OF MIDDLEBURG HEIGHTS, APPELLANT, *v*.

INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Middleburg Hts. v. Indus. Comm.*, 2001-Ohio-1267.]

*Workers' compensation—Elements of wage loss—Industrial Commission's award*

*of wage-loss compensation not an abuse of discretion, when.*

(No. 00-118—Submitted May 30, 2001—Decided August 15, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-1629.

_____

*Per Curiam.*

{¶ 1} Appellee-claimant Michael L. Schaefer injured his back on April 23, 1995, while working as a police officer for appellant city of Middleburg Heights. Dr. Paul C. Martin stated that claimant could not return to his former position of employment. He stated that claimant was "physically capable of returning to a modified work environment in which he would not be required to lift over 20 to 25 pounds. He would also need to work in a work environment in which he would be able to alternate his sitting and standing so as to avoid prolonged periods in any one position. He would need to avoid frequent or repetitive bending, twisting, or stooping."

{¶ 2} Continuing, Dr. Martin concluded:

"At this time, I believe Mr. Schaefer would benefit from enrollment into a vocational rehabilitation program. Because Mr. Schaefer is unable to return to his former position without restrictions, unless his employer is able to provide a modified work environment, he would need to consider being retrained for a different vocation. He would need to be retrained to work in a position which would be consistent with his current physical capabilities."

**{¶ 3}** In late 1995, claimant took a disability retirement from the force, as he was no longer able to physically perform his duties, and Middleburg Heights had no light duty work available. On April 1, 1996, claimant got a job as a computer operator for General Electric Company. He worked there approximately two months. Beginning with the week ending on June 9, 1996, he started working at the Geon Company. While employed there, he received two bonuses—a "signing bonus" for approximately $2,000 and another bonus for $5,000.

**{¶ 4}** On March 26, 1998, claimant moved appellee Industrial Commission of Ohio for wage-loss compensation from April 1, 1996 through August 3, 1997, alleging that he made less at his subsequent employment than he had at Middleburg Heights. A district hearing officer ("DHO") granted that motion in part, after finding a causal relationship between the injury and wage loss. The DHO observed that "[t]he medical evidence is undisputed that claimant's low back condition is permanent and precludes claimant from returning to his former position of employment as a police officer for the city of Middleburg Heights * * *."

**{¶ 5}** In determining the actual amount of wage loss, the DHO assigned claimant's initial signing bonus to the week ending June 9, 1996, since it was "his act of taking the job which earned him such 'signing bonus.' " Accordingly, for that week, wage loss was denied "as his total earnings of $2,730.84 (wages and bonus) exceed his average weekly wage and there was no wage loss as a result of being unable to return to his former position of employment."

**{¶ 6}** The DHO had more difficulty with the $5,000 bonus, since she could not attribute it to a specific time frame. She, therefore, divided the sum by claimant's sixty weeks at Geon, and determined the existence of a wage loss based on those figures.

**{¶ 7}** Following that order, claimant obtained a letter from Geon's Chief Information Officer, Kenneth M. Smith. Smith indicated that claimant's bonus check of $5,000 "represent[ed] your contribution to the Compound business

implementation of Geon 2000 that ran from November 1, 1996 through February 1, 1997. This bonus check was the result of the hard work and determination you and your teammates put forth to complete this project on time and on budget." Based on this information, a staff hearing officer, on appeal, vacated the DHO order. He ordered:

"Claimant is awarded wage loss compensation from 04/01/1996 through 05/31/1996 inclusive, from 06/10/1996 through 10/31/1996 inclusive, and from 02/02/1997 through 08/03/1997 inclusive.

"Wage loss compensation is denied from 06/01/1996 through 06/09/1996 since the Staff Hearing Officer finds that claimant received a $2,000.00 bonus when he began his employment with the Geon Company and the Staff Hearing Officer attributes this bonus to the above period.

"Wage loss compensation is denied from 11/01/1996 through 2/01/1997 since the Geon Company paid claimant a $5000.00 bonus (06/30/1998 letter of Ken Smith) covering claimant's work for that period and bringing claimant's weekly wages above his full weekly wage of $883.76 for that period.

"The wage loss awarded above is to be computed by taking two-thirds of the difference between claimant's full weekly wage of $883.76 and claimant's actual weekly wages earned."

{¶ 8} Further appeal was denied.

{¶ 9} On December 24, 1998, Middleburg Heights filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in awarding wage-loss compensation. The court of appeals disagreed and denied the writ, prompting Middleburg Heights' appeal to this court as of right.

{¶ 10} Wage loss has two elements—actual wage loss and a causal connection between the allowed condition and the wage loss. *State ex rel. Watts v.*

*Schottenstein Stores Corp*. (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204. Middleburg Heights denies the existence of both. Review establishes otherwise.

*Actual wage loss*

{¶ 11} At issue are claimant's bonuses. Middleburg Heights' position in this regard has a contradictory nature. The pleadings often imply that the commission ignored claimant's bonuses. Yet, the balance of its efforts challenge the manner in which the bonuses were considered.

{¶ 12} As stated, the commission did include claimant's bonuses in its calculation/consideration. It effectively apportioned the amounts to those weeks over which claimant's extra efforts generated the bonus. Consequently, "bonus" weeks generated weekly earnings that exceeded claimant's weekly earnings at Middleburg Heights. "Non-bonus" weeks, in turn, saw weekly wages fall below claimant's former earnings, resulting in actual wage loss. Accordingly, the commission denied wage loss over the former, and paid it over the latter.

{¶ 13} Nevertheless, Middleburg Heights argues that the claimant's earnings over the entire period requested by claimant, if totaled, exceed the amount claimant would have made working a comparable number of weeks with Middleburg Heights. Middleburg Heights thus advocates wage-loss denial over the entire period.

{¶ 14} Middleburg Heights' aggregation theory is seriously undermined by *State ex rel. Haddox v. Indus. Comm*. (2000), 88 Ohio St.3d 279, 725 N.E.2d 635. There, claimant's industrial injury forced him into a lower-paying, light-duty job with his employer. During some weeks, however, claimant was able to secure considerable overtime. Some of those weeks produced earnings in excess of claimant's full weekly wages at his old position. Other weeks, it did not.

{¶ 15} During those weeks in which claimant's former full weekly wage ("FWW") exceeded claimant's earnings, his employer, which was self-insured, used a novel way of calculating the amount of compensation due. Any amount in

excess of the FWW in "prior weeks would carry over to weeks in which earnings fell beneath the FWW. This had the effect of either reducing or eliminating the amount of wage-loss compensation for these weeks." *Id*., 88 Ohio St.3d at 279, 725 N.E.2d at 635-636.

{¶ 16} We rejected the employer's formula, writing:

"[The employer] argues that nothing specifically mandates a weekly as opposed to aggregate wage comparison. We disagree. R.C. 4123.56(B) refers to the payment of compensation at 'sixty-six and two-thirds per cent of [claimant's] *weekly* wage loss.' * * * Similarly, former Ohio Adm.Code 4121:3-32(A)(5), applicable to this case, bases the standard for evaluation on claimant's *weekly* wage, be it full or average *weekly* wage. There is, therefore, support for the conclusion that a week-by-week analysis of wage loss is mandated." (Emphasis added.) *Id*. at 281, 725 N.E.2d at 637.

{¶ 17} *Haddox* supports the commission's decision to apportion bonuses in a relevant weekly manner. Middleburg Heights responds that to do so constitutes an impermissibly retroactive application of the Ohio Administrative Code. Because the commission's calculation parallels Ohio Adm.Code 4125-1-01(A)(16),[1] which became effective after claimant's injury, Middleburg Heights claims that the commission applied the code section retrospectively. We disagree.

{¶ 18} The DHO order specifically acknowledged that Ohio Adm.Code 4125-1-01(A)(16) did not apply. Thus, there is no evidence that the commission

---

1. Ohio Adm.Code 4125-1-01(A)(16) states: " 'Present earnings' means the claimant's actual weekly earnings which are generated by gainful employment unless the claimant has substantial variations in earnings. Where the claimant has substantial variations in earnings, the adjudicator shall apportion the earnings over such period of time that reasonably reflects the claimant's efforts to earn such amount. Earnings generated from commission sales, bonuses, gratuities, and all other forms of compensation for personal services customarily received by a claimant in the course of his or her employment and accounted for by the claimant to his or her employer will be included in present earnings for the purposes of computing the wage loss award. In instances where sales commission, bonuses, gratuities, or other compensation are not paid on a weekly or biweekly basis, their receipt will be apportioned prospectively over the number of weeks it is determined were required to initiate and consummate the sale or earn the bonus, gratuity, or other compensation."

unwittingly applied this provision. What the DHO also said, however, was that the provision gave valuable insight into a reasonable way to handle bonuses over a period in which no guidelines existed.

{¶ 19} Prior to Ohio Adm.Code 4125-1-01(A)(16), there was no approved method of allocating bonuses. This gave the commission considerable discretion in the methods it chose. Ostensibly, the commission experimented with different methods and eventually codified the most reasonable one for purposes of uniformity.

{¶ 20} For these reasons, the finding of actual wage loss over the denominated periods was not an abuse of discretion.

*Causal relation*

{¶ 21} Dr. Paul Martin indicated that claimant could not return to his former job as a police officer. He advocated modified light-duty work, which allowed for alternating periods of sitting and standing. Because Middleburg Heights had no such work, claimant was forced to leave that employer and find work elsewhere. When claimant found alternate full-time work within Dr. Martin's restrictions, the circle of causation was complete.

{¶ 22} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

*William W. Johnston*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellee Industrial Commission.

*Mitchell A. Stein*, for appellee Michael L. Schaefer.

_____